UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

JOHN ROSE,

    Plaintiff,

V.

DOCTOR DOUG CRALL, M.D., et al.,

    Defendants.

Civil Action No. 5:14-465-KKC

**AMENDED MEMORANDUM OPINION AND ORDER**

John Rose ("Rose") is in custody of the Kentucky Department of Corrections ("KDOC") and is presently confined in the Northpoint Training Center ("NTC") in Burgin, Kentucky. Proceeding *pro se*, Rose has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights to medical care and treatment. [R. 1]. Specifically, Rose claims that the Defendants[1] have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment of the United States Constitution, by failing to provide adequate medical care and treatment to him relative to the broken foot he sustained in January of 2014.

Rose has also moved to amend and correct his complaint [R. 7], advising the Court that he inadvertently named Tammy Wilson LPN, NTC, as a defendant when he should have named Tammy Pittman, LPN, NTC, as a defendant. Essentially, Rose wants to substitute Tammy Pittman for Tammy Wilson as a named defendant and does not want to assert a claim against Tammy Wilson. Since no summons has issued to any of the named defendants and since Rose is free to amend his complaint once as a matter of right,

---

[1]The named Defendants are Dr. Doug Crall, M.D., Medical Coordinator, KDOC; Dr. Richard Rhee, M.D.; Shelli Conyers Votaw, APRN, NTC; Leann Watson, LPN, NTC; Lisa Good, LPN, NTC; Tammy Pittman, LPN, NTC; Julie Thomas, Deputy Warden, NTC; and Correct Care Solutions.

pursuant to Fed. R. Civ. P. 15(a), Rose's motion to amend/correct the complaint will be granted. In screening Rose's complaint, the Court will consider Tammy Pittman, LPN, NTC, to be a named defendant instead of Tammy Wilson, LPN, NTC.

The Court conducts a preliminary review of Rose's complaint because he has been granted permission to proceed *in forma pauperis* and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e) (2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Rose's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts his factual allegations as true and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## FACTUAL BACKGROUND[2]

Rose states that on January 31, 2014, while he was on his way to the gym, he slipped (and presumably fell) on ice and hurt his foot. He proceeded to the gym and ran on the treadmill. [R. 1, p. 2]. Two days later, on February 2, 2014, Rose filed a Sick Call Request with the Medical Department, stating: "I hurt my right foot somehow. Will explain on sick call." [R. 1-1, Page ID# 15]. Rose explained that he had tried to give the foot time to heal but that it seemed to be getting worse. *Id*. Rose was seen at sick call by a nurse and was given an elastic wrap for his injured foot, but his foot was not x-rayed.

The condition of Rose's foot did not improve, and he continued to experience pain in the foot. He returned to sick call repeatedly, as well as making visits to the Nurse Practitioner, complaining about his foot pain. Rose states that he filed additional Sick Call

---

[2]The foregoing factual background is taken strictly from the statements Rose makes in the complaint.

Requests to the Medical Department concerning his injured foot and the associated pain on February 20, April 27, May 1, and May 5, 2014, and that he repeatedly requested that x-rays be taken of his injured foot, but that no x-rays were taken at that time. Rose was apparently examined only by nurses during these times; he states that he was never examined by a physician. Finally, when Rose returned to sick call again on May 15, 2014, it was agreed that his foot should be x-rayed. Rose's foot was x-rayed, some three and one-half months after he injured his foot. The x-rays revealed that his foot had been broken and that it had healed incorrectly, resulting in increased pain in the foot. Rose states that the x-rays also indicated bone spurs in the foot, that there is some type of unknown mass on the top of his foot, and that he has been advised that the mass could be a blood clot, an infection, or bone fragments. [R. 1, page 4].

Rose claims that the defendants have been "deliberately indifferent" to his medical needs regarding the care and treatment of his broken foot, as evidenced by the fact that no x-rays were taken of his foot for three and one-half months after the foot was broken, and that due to this lack of care and treatment, his broken foot healed improperly, resulting in continuing foot pain. Rose requests that his foot be surgically repaired in order to stop the pain and to restore "proper walking." [R. 1, page 14]. Rose also requests unspecified compensatory damages against the Defendants for ignoring his medical needs and causing him unnecessary pain and suffering. *Id.*

On May 23, 2014, Rose filed an Inmate Grievance (No. 014-289), summarizing the history of his foot injury and treatment, and requesting that he be scheduled to see a podiatrist as soon as possible. [R. 1-1, Page ID## 21-22]. NTC officials responded that his request was non-grievable. [R. 1-1, Page ID# 23]. Rose appealed the denial of his grievance

to no avail. Thus, it appears that prior to filing this action, Rose exhausted the administrative remedies available to him.

## DISCUSSION

### A. Constitutional violation

To assert a viable claim under § 1983, a plaintiff must establish that his constitutional rights were violated by one acting color of law. Although Rose does not expressly state which constitutional right is at issue, by claiming that the defendants have been "deliberately indifferent" to his serious medical needs, he is asserting an Eighth Amendment claim.

### B. Claims against the defendants in their Official Capacity

Rose does not specify whether he is suing the defendants in their official capacity as government employees or in their individual capacity. When a plaintiff does not allege the capacity in which he is suing the defendants, it is construed that they are being sued in their official capacity. *Wells v. Brown*, 891 F.2d 591, 593-94 (6th Cir. 1989). If the plaintiff seeks only monetary relief, the defendants are not subject to suit for money damages in their official capacity because government officials sued for damages in their official capacity are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 70-71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169(1985). A state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for purposes of § 1983 or a constitutional claim. *Id.*; *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Thus, the official-capacity claims for monetary damages against all named defendants will be dismissed for failure to state a claim upon which relief can be granted.

28 U.S.C. § 1915(e) (2) (B) (ii). As to Rose's claim for injunctive relief, *viz.*, surgery to correct his improperly healed broken right foot, that claim is permissible against the defendants in their "official capacity."

## C. Claims against Defendants in their Individual Capacities

### 1. Dr. Richard Rhee

Rose identifies defendant Richard Rhee, M.D., as an x-ray specialist employed by EMDS Lexington, 2030 Ader Road, Jeanette, Pennsylvania. It is unclear from Rose's complaint whether Dr. Rose is the medical professional who x-rayed Rose's foot or whether he simply reviewed and interpreted the results of the x-ray of Rose's foot that was taken by someone else. Regardless, Rose has no viable claim against Dr. Rhee, since Dr. Rhee was not a physician in the medical department at NTC and was in no position to provide medical care and treatment to Rose for his broken foot. Dr. Rhee simply read the x-ray that was taken in May of 2014. In essence, Dr. Rhee's involvement with Rose and his broken foot occurred after the fact, *i.e.* after the alleged "deliberate indifference" to Rose's serious medical needs regarding the care and treatment of his broken foot had already occurred in the interim between January 2014, when the foot was allegedly broken, and May of 2014, when the foot was x-rayed.

Consequently, Rose has failed to state a constitutional claim against Dr. Rhee for which relief can be granted. Dr. Rhee will be dismissed as a named defendant.

### 2. Prison Correct Care Services

In the caption of his Complaint, Rose names "Prison Correct Care Services" ("PCCS") as a defendant, and on page 2B of 8 of the Complaint, Rose lists "Correct Care Solutions" ("CCS") as a defendant. [R. 1, Page ID# 3]. While not identified with exactly the same name, these two names appear to refer to the same defendant.

Rose does not state what actions PCCS or CCS took that violated his constitutional rights. In fact, the narrative statement of Rose's claim makes no reference whatsoever to PCCS/CCS in any way. PCCS/CCS may provide medical care and services to inmates, pursuant to a contract it may have with the KDOC, but the Court is only speculating as to that possible connection. Even if that is the connection, Rose's complaint is devoid of any statements about the conduct of PCCS/CCS that could possibly be the basis for an Eighth Amendment "deliberate indifference" claim. A plaintiff must plead that each government official-defendant, through his or her own actions, has violated the Constitution. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Nwaebo v. Hawk Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004); *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976).

Consequently, Rose fails to state an Eighth Amendment claim against PCCS/CCS upon which relief may be granted because he does not explain how it was personally involved in the alleged unlawful conduct. His claims against PCCS/CCS will be dismissed.

### 3.     **Dr. Doug Crall, M.D., Medical Coordinator**

Doug Crall, M.D., is the Medical Coordinator for the KDOC. Rose states that on June 19, 2014, he appealed the denial of his grievance filed at NTC concerning the medical care and treatment of his broken foot (Grievance No. 014-289) to Dr. Crall. Rose states that approximately two months later, on August 27, 2014, he wrote a letter to Dr. Crall inquiring about the status of his appeal and requesting him to respond to the appeal. Upon receiving no response from Dr. Crall, on November 3, 2014, Rose wrote Dr. Crall a second letter inquiring about the status of his appeal and requesting a response. Rose states that Dr. Crall never responded either to his appeal or to his two follow-up letters. [R. 1, Page ID# 6].

In his administrative/supervisory position as the KDOC Medical Coordinator, Dr. Crall was in no position to provide medical care and treatment to Rose for his broken foot immediately after it was broken and during the time Rose was paying visits to Sick Call and seeking medical care treatment from medical personnel at NTC. Thus, Dr. Crall could not have been "deliberately indifferent" to Rose's serious medical needs at that time. However, after Rose appealed the denial of Grievance No. 014-289 to Dr. Crall, he arguably was on notice of Rose's broken foot and the alleged problem Rose has had obtaining medical care and treatment for that foot. Assuming the truthfulness of Rose's statements that he has received no response from Dr. Crall in relation to his grievance appeal and/or his two follow-up letters of inquiry in August of 2014 and November of 2014, it is arguable that Dr. Crall has been "deliberately indifferent" to Rose's ongoing foot problem, given that it appears that he was on notice of the problem in June or July of 2014, and took no action at all.

Having conducted the initial screening required by 28 U.S.C. §§ 1915(e) (2) (B), 1915A, the Court concludes that the complaint warrants a response from Dr. Crall in his official capacity to Rose's request for injunctive relief and a response from Dr. Crall in his individual capacity to Rose's claim for monetary damages arising from Dr. Crall's alleged "deliberate indifference" to Rose's appeal of his grievance.

4.      **Julie Thomas, Deputy Warden, NTC**

At some point during the time when Rose was making visits to Sick Call seeking treatment for his injured foot, he wrote a letter to Julie Thomas, Deputy Warden at NTC, concerning this matter.[3] In response to his letter to her, Deputy Warden Julie Thomas looked into the matter, and by letter dated May 22, 2014, she informed Rose that: "I met

---

[3]**Error! Main Document Only.**Rose's letter to Julie Thomas is not of record; therefore, the Court has no knowledge as to the exact contents of this letter, but apparently he made reference to Shelli Votaw, one of the nurses in the medical department at NTC.

with Shelli Votaw concerning your letter. She advised me that your medical concerns are being addressed." [R. 1-1, Page ID# 28]. Rose may be attempting to claim that Deputy Warden Julie Thomas violated his Constitutional rights by failing to do more than look into the matter and respond to his letter. Assuming Rose is claiming that Deputy Warden Thomas was "deliberately indifferent" to his serious medical needs, this claim is without merit because there is no *respondeat superior* liability where the plaintiff alleges only that the defendant merely failed to act or control employees. *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007); *Salephour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). "Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

At a minimum, a plaintiff must show that the official at least implicitly authorized, condoned, approved or knowingly acquiesced in the deprivation of the plaintiff's constitutional rights. *Hays*, 668 F.2d at 874; *Carter v. Wilkinson*, No. 2:05-CV-0380, 2009 WL 81217, at * 10 (S. D. Ohio, January 9, 2009). Reading between the lines of his complaint, Rose appears to claim that Deputy Warden Julie Thomas should have done more than simply consult with Shelli Votaw and inform him of the results of that consultation. He does not allege that Julie Thomas directly participated in, condoned, or encouraged the alleged unconstitutional conduct committed by other prison personnel. Thus, he has failed to establish a viable Constitutional claim against Deputy Warden Julie Thomas. His claim against Deputy Warden Julie Thomas in her individual capacity for monetary damages will be dismissed.

**5.    Shelli Conyers Votaw, APRN; Leann Watson, LPN; Lisa Good, LPN; and Tammy Pittman, LPN**

In the caption of his Complaint, Rose names Shelli Conyers Votaw, APRN; Leann Watson, LPN; Lisa Good, LPN; and Tammy Pittman, LPN, as defendants. In the narrative portion of Rose's complaint, he refers only to Shelli Votaw, but the Sick Call Requests attached to his complaint [R. 1-1, Page ID## 15-20] contain, collectively, what appear to be the signatures of Leann Watson, Lisa Good, and Tammy Pittman, thus indicating that over the course of Rose's five visits to the prison's Medical Department, he was examined and/or may have been treated by all of the foregoing nurses at NTC. Additionally, in Section III.C. of the complaint, Rose states: "Every nurse listed has knowledge of Plaintiff's broken foot healing incorrectly, causing severe agonizing pain and not one will help get it corrected." [R. 1, Page ID# 10].

Based on a review of Rose's complaint and the attachments thereto, it appears that whenever he went to Sick Call, he was examined and/or treated by nurses Shelli Votaw, Leann Watson, Lisa Good, and Tammy Pittman. For these reasons, the Court concludes that Rose's claim against these four nurses in their individual capacity for monetary damages can go forward at this juncture. They must respond to his complaint.

## CONCLUSION

Having conducted the initial screening required by 28 U.S.C. §§ 1915(e) (2) (B), 1915A, the Court concludes that the complaint warrants a response from the remaining defendants. Defendant Dr. David Crall, in his official capacity as the KDOC Medical Coordinator, will be required to respond to Rose's claims for injunctive relief, *viz*, corrective surgery for his improperly healed broken foot, as well as to respond to Rose's claim against him in his individual capacity for monetary damages. Defendants Shelli Conyers Votaw,

9

APRN, Leann Watson, LPN; Lisa Good, LPN; and Tammy Pittman, LPN, in their individual capacities, will be required to respond to Rose's claim for monetary damages.

Because Rose is proceeding *in forma pauperis*, the Clerk of the Court and the United States Marshal's Service ("USMS") will serve the defendants with a summons and a copy of the complaint and its attachments on Rose's behalf. Fed. R. Civ. 4(c) (3); 28 U.S.C. § 1915(d).

Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's motion to amend or correct the complaint [R. 7] to substitute Tammy Pittman, LPN, NTC, as a defendant, for Tammy Wilson, LPN, NTC [R. 7] is **GRANTED**.

(2) The Clerk of the Court shall amend the CM/ECF docket sheet to name Tammy Pittman, LPN, NTC as a defendant instead of Tammy Wilson, LPN, NTC.

(3) Plaintiff's claims for monetary damages against all Defendants in their official capacity are **DISMISSED**.

(4) Plaintiff's claims for injunctive relief against Defendants Dr. Richard Rhee, M.D.; Shelli Conyers Votaw, APRN, NTC; Leann Watson, LPN, NTC; Lisa Good, LPN, NTC; Tammy Pittman, LPN, NTC; Julie Thomas, Deputy Warden, NTC; and Prison Correct Care Solutions/Correct Care Solutions in their official capacity are **DISMISSED**.

(5) Plaintiff's claims for monetary damages against Defendants Dr. Richard Rhee, M.D.; Julie Thomas, Deputy Warden, NTC; and Prison Correct Care Solutions/Correct Care Solutions in their individual capacity are **DISMISSED**.

(6) All claims having been resolved against Dr. Richard Rhee, M.D.; Julie Thomas, Deputy Warden, NTC; and Prison Correct Care Solutions/Correct Care Solutions having been resolved, they are **DISMISSED** as parties to this action.

(7) Plaintiff's claims against Dr. Doug Crall, M.D., Medical Coordinator, KDOC, in his official capacity for injunctive relief and in his individual capacity for monetary damages shall proceed.

(8) Plaintiff's claims against Shelli Conyers Votaw, APRN, NTC; Leann Watson, LPN, NTC; Lisa Good, LPN, NTC; Tammy Pittman, LPN, NTC, all in their individual capacities for monetary damages shall proceed.

(9) The Clerk shall prepare the documents necessary for service of process upon:

    a. Dr. Doug Crall, M.D., Medical Director, KDOC;

    b. Shelli Conyers Votaw, APRN, NTC;

    c. Leann Watson, LPN, NTC;

    d. Lisa Good, LPN, NTC; and,

    e. Tammy Pittman, LPN, NTC;

(10) The Clerk shall prepare a "Service Packet" consisting of the following documents for service of process upon these defendants:

    a. a completed summons form;
    b. the Complaint [R. 1];
    c. this Order; and
    d. a completed USMS Form 285.

(11) The Clerk shall provide the Service Packet(s) to the USMS.

(12) Service of Process upon Dr. Doug Crall, M.D., Medical Director, KDOC, shall be conducted by the USMS by serving a Service Packet *personally* upon him, through arrangements with the Kentucky Department of Corrections.

(13) Service of Process upon Shelli Conyers Votaw, APRN, NTC; Leann Watson, LPN, NTC; Lisa Good, LPN, NTC; Tammy Pittman, LPN, NTC, shall be conducted by the USMS by serving a Service Packet *personally* upon each of them, through arrangements with Northpoint Training Center.

11

The USMS is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(14)  The Clerk is further directed to serve a copy of this Order on the Kentucky Department of Corrections, and to note the service in the docket sheet;

(15)  The plaintiff **SHALL**:

a.  Immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

b.  Communicate with the court *solely* through notices or motions filed with the Clerk's Office. **The court will disregard correspondence sent directly to the judge's chambers.**

c.  In every notice, motion, or paper filed with the court, certify in writing that he has mailed a copy to every defendant (or his or her attorney) and state the date of mailing. **The court will disregard any notice or motion which does not include this certification.**

Dated July 15, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY